WILLIAM H. HALLENBECK *vs.* JACOB GETZ.

Hartford Dist., Oct. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

It is provided by Gen. Statutes, § 3003, "that pawnbrokers are prohibited from taking or receiving, directly or indirectly, more than twenty-five per cent per annum for the use of money loaned on personal property;" and § 3005 provides a penalty for a violation of the statute. Held that the pawnbroker, to make himself liable, must have actually received the unlawful interest, and that demanding it after having received the property, or charging it on an account book, is not enough.

Any statute which imposes a penalty for doing or omitting to do an act is penal; and is especially so when an action may be brought for the penalty by a common informer.

In ordinary cases the correct construction is given to a statute by reading its words in their general and popular sense.

[Argued October 10th—decided October 25th, 1893.]

VOL. LXIII.—25

ACTION on Gen. Statutes, § 3005, to recover a penalty for the taking by the defendant of unlawful interest on a loan of personal property; brought to the Court of Common Pleas of Hartford County, and tried to the jury before *Calhoun, J.* The court denied a motion to set aside a nonsuit granted, and the plaintiff appealed to this court. The case is stated in the opinion.

*H. D. Middleberger* and *H. O'Flaherty*, for the appellant.

*J. L. Barbour*, for the appellee.

ANDREWS, C. J. This is an action brought to recover a forfeiture under sections 3003 and 3005 of the General Statutes. The complaint alleges, in substance, that the defendant was a pawnbroker in the city of Hartford; that on the 23d day of November, 1889, the plaintiff delivered to the defendant, by way of pledge or pawn for a loan of eight dollars, a double barrelled gun of the value of sixty dollars; and that the defendant as such pawnbroker took and received from the plaintiff the sum of one dollar and fifty cents for the use of said sum of eight dollars for one month, which sum was more than the lawful rate of interest chargeable by law for the use of money loaned by pawnbrokers on personal property. There was a second count under which no claim was made.

The complaint claimed damages to the treble value of the gun. The answer denied all the averments in the complaint except that the defendant was a pawnbroker. Issue was joined to the jury. All the evidence offered by the plaintiff, so far as it bears on the question of taking or receiving interest by the defendant, is this:—

The plaintiff testified:—" My name is Wm. Watson Hallenbeck. On the 23d day of November, 1889, I was the owner of a double barrelled shot gun worth sixty dollars. On that day I pawned the gun with Mr. Getz for a loan of eight dollars. Mr. Getz gave me the eight dollars, and a pawn ticket by which I was to pay him nine dollars and fifty

cents in thirty days for a return of the property. I sent John Hendron with a ten dollar bill and the pawn ticket, and told him to get the gun pawned with Getz which the ticket called for. He did not return the gun to me. It has never been returned. He brought back to me the ten dollar bill. I wrote Getz a letter afterwards making a further demand for a return of the property but received no reply."

*John Hendron* testified :—" I am an expressman. On May 23,1890, I was sent for to go to Pratt & Whitney's shop. I went and saw Mr. Hallenbeck. He gave me a pawn ticket and a ten dollar bill, and told me to go and get the gun he had left in pawn with Mr. Getz, the pawnbroker. I went to Getz's place and asked for the gun. Getz asked me how much I was going to pay on it, I told him nine dollars and fifty cents. He said that was not enough—that he ought to have more; that he had been at expense in keeping and cleaning the gun, and that I might have it for twelve dollars. I told him I had only ten dollars and could not pay any more, and asked him if he would not let me have the gun. He said ' No,' and I came away, and went back and saw Hallenbeck and told him what I had done, and gave him back the ten dollar bill. He got me to put my name and the date on the back of the ticket, and paid me fifty cents for my services."

The plaintiff then rested his case, and the defendant moved for judgment as in a case of nonsuit, which motion was granted by the court. Afterwards there was a motion to set aside the nonsuit, which being refused the plaintiff appealed to this court.

We think the nonsuit was properly granted. The evidence failed to show that the defendant had taken or received any unlawful interest. He had not taken or received any interest whatever. He had not even received the amount of the loan. The statute which fixes a rate of interest beyond which if a pawnbroker takes interest he is liable to a forfeiture is penal in its nature and must be construed with reasonable strictness. Any statute which imposes a penalty for the doing or omitting an act is penal. Especially is it so when an action for the penalty may be brought by a common

informer. 3 Black Comm., 160; Dwarris on Statutes (Potter's ed.,) 73, 74. But wholly apart from the rule of construction applying to penal statutes the nonsuit was correct. The word "take" has, indeed, very many shades of meaning. The precise meaning which it is to bear in any case depends upon the subject in respect to which it is used. In this statute it means, as we think, that the pawnbroker, in order to be liable to the penalty, must take the unlawful interest in such a manner that he gets it into his possession. He must take it in the sense of receiving it. The pawner must have parted with it. Unless this is done and the pawnbroker has received the interest into his possession the penalty of the statute is not incurred. Merely asking for the forbidden rate of interest, or demanding it, or charging it on an account book, is not enough. "To take" means, in its general sense, to get into one's possession or power; to acquire; to obtain; to procure. While to "receive," means to get by a transfer, as to receive a gift, to receive a letter, to receive money. In ordinary cases the correct construction is given to a statute by reading the words in which it is expressed in their general and popular sense.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.