## First National Bank of Jackson v. Carpenter et al.

(Decided March 3, 1931.)

A. S. JOHNSON and HENRY L. SPENCER for appellant.

O. H. POLLARD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming. •

On September 23, 1919, A. C. Carpenter and wife sold and conveyed to Lillian Hounshell three tracts of land in Breathitt county. In payment therefor Lillian Hounshell and her husband executed and delivered to Carpenter three notes of $1,000 each, due and payable in six, twelve, and eighteen months, and secured by a lien on the land conveyed. The first note, which was sold to the First National Bank in Jackson, Ky., was paid when it became due. On July 21, 1921, which was after the second and third notes became due, Carpenter borrowed from the First National Bank of Jackson the sum of $2,000, for which sum he executed his note and pledged as collateral security the other two notes of Lillian Hounshell and her husband. Carpenter's note to the bank was renewed from time to time; the last renewal

taking place on January 22, 1927, at which time the face of the note amounted to $2,258.

Carpenter having failed to pay the note, the bank brought this suit on May 10, 1928, to recover thereon and enforce the lien notes executed by the Hounshells. The Hounshells paid the third note, and pleaded that the second note which was pledged after its maturity was paid before it was indorsed and delivered to the bank. On final hearing the plea of payment was sustained, and judgment rendered dismissing the petition as to the Hounshells. The bank appeals.

Briefly stated, the evidence is as follows: Carpenter in his first deposition deposed that the two notes had not been paid at the time they were put up as collateral. He did not know whether he collected any money on the notes from his sister Lillian Hounshell or not. He wrote the Hounshells to send him $500, but did not know whether he got the money or not. He did get some interest on the notes and gave the money to the bank. Besides that he did not think he got another penny. In his second deposition he stated that, at the time he put the two notes up as collateral neither one of them had been paid. He and Lillian were in the First National Bank and talked about the notes with Mr. Terry, but he did not know when that was. He supposed that they went to the bank to get an extension of time on his loan. If he ever collected anything from Lillian on the notes he had no recollection of it. He did not recall having called Lillian over the telephone and requesting her to pay the second $1,000 note, and did not remember her giving him a check for $500 a short time thereafter. He would not say positively that she did not. He did not remember of talking over the phone to Grover Davis and telling him that only $1,000 on the land was unpaid. Charles Terry, president of the First National Bank of Jackson, after testifying to the making of the loan, stated that Mrs. Hounshell was in the bank more than once and said that one of the notes had been paid. He thought it was the twelve months' note.

Mrs. Hounshell testified that she lived at Quicksand Creek, in Breathitt county. In January, 1921, her brother called her over the phone and asked her if she would not pay the second note. She told him that she had enough money in the bank to make a payment and would get the rest for him in a few days. She then sent him a check for $500 on the First National Bank. On the

same day she went to Wise Carpenter and borrowed $500 from him to finish paying the note. Along about the 23d or 24th of January, 1921, she went to town with Wise Carpenter and Wise Carpenter deposited the $500 to her credit. Afterwards she went to Mrs. A. C. Carpenter's place of business and saw her brother there. She then wrote him a check for the balance of the note. She did not get the note, as Wise Carpenter was anxious to return to the country, but told the Carpenters either to send the note or destroy it. She never found out that the bank was claiming the note until the summer of 1924. She received the checks back, but failed to take care of them. She did not know where her deposit book was. She had not done any business with the bank since 1924. She did not go to the clerk's office and have the lien released. She did not have in her possession a slip showing her deposit. She neglected to fill out the stubs and the checks did not appear on her check book.

Wise Carpenter testified that he made a loan of $500 to Mrs. Hounshell in January, 1921. She and her husband executed a note for the loan, and the note was subsequently paid off. On the day the loan was made he brought Mrs. Hounshell to town and deposited the money to her credit in the First National Bank. Mrs. Hounshell returned with him that afternoon. Grover Davis, who purchased the land from Mrs. Hounshell, testified that before he made the purchase he inquired of A. C. Carpenter if there was anything against it, and Carpenter replied that he held $1,000 against it and that was about all. Ben C. Sewell, cashier of the First National Bank of Jackson, testified that the bank records showed that on January 15, 1921, a check for $540, drawn by Lillian Hounshell on the First National Bank, and payable to A. C. Carpenter, was paid and charged to Mrs. Hounshell's account, and credited to the account of A. C. Carpenter, and that on January 26th another check for $500, dated January 24, 1921, and signed by Lillian Hounshell, and payable to the order of A. C. Carpenter, was charged to her account and credited to the account of A. C. Carpenter.

It is insisted that the evidence is not sufficient to sustain the chancellor's finding. The argument is that but little effect should be given to Mrs. Hounshell's testimony because she did not take up the note at the time of its alleged payment, or have it released of record, and was unable to produce the canceled checks or her stub books or her bank book showing her credits or debits. It

is also argued that A. C. Carpenter first testified that the note had not been paid at the time it was pledged as collateral, and that his subsequent inability to remember was due to his desire to help his sister. Whatever may be the force of this argument, the other evidence must not be overlooked. Mrs. Hounshell's testimony that she borrowed part of the money from Wise Carpenter and paid the note in two checks is corroborated, not only by Wise Carpenter, who testified that the loan was made and the money deposited to her credit, but also by the cashier of the bank, who testified that the records of the bank showed that two checks for about $500 each payable to the order of A. C. Carpenter were charged to her account and credited to the account of A. C. Carpenter. In view of this evidence, it is not perceived how the chancellor could have reached any other conclusion.

As the bank acquired the note after it was overdue, it was not a holder in due course, and the note was subject to the defense that it had been paid before its transfer to the bank. Section 3720b-52, Kentucky Statutes; Austin v. First National Bank of Scottsville, 150 Ky. 113, 150 S. W. 8.

Judgment affirmed.